**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **Dustyn Banik, Alma Sanchez, and Gerran Banik,** *Plaintiffs,* | § | |
| | § | |
| **vs.** | § | **Cause No. 4:25-cv-2487** |
| | § | |
| **City of Brenham, Texas; Corporal Tina Bruno; Sergeant Ashley Batson, née Burns; Lieutenant Kelvin Raven; Officer. LeDarion Jenkins;** *Defendants.* | § | **Hon.** |

**Plaintiffs' Original Complaint**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Plaintiffs **Dustyn Banik, Alma Sanchez,** and **Gerran Banik** ("Plaintiffs"), by and through their attorney, Brandon J. Grable of Grable PLLC, complaining of Defendants **Corporal Tina Bruno; Sergeant Ashley Batson, née Burns; Lieutenant Kelvin Raven** (in both his individual and official capacities); **Officer Ledarion Jenkins;** and the **City of Brenham, Texas** and respectfully alleging as follows:

## I. INTRODUCTION

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983, seeking damages for Defendants' violations of Plaintiffs' constitutional rights secured by the First and Fourth Amendments to the United States Constitution.

2. On October 12, 2023, after conducting a brief investigation at the scene of a reported dispute, Defendants determined that Plaintiffs had not committed any crime. Despite this determination, Defendants continued to detain Plaintiffs for over an hour, placed two of them in handcuffs, and confined them in a police vehicle—all because Plaintiffs exercised their clearly established right not to identify themselves when not under lawful arrest.

3. Defendants' continued detention of Plaintiffs after determining no crime had been committed, solely because Plaintiffs refused to identify themselves (as was their legal right), constitutes an unreasonable seizure under the Fourth Amendment and retaliation for the exercise of clearly established First Amendment rights.

4. Defendant Lieutenant Kelvin Raven, acting in his capacity as a final policymaker for the Brenham Police Department, both participated in and ratified these constitutional violations, and later

engaged in further retaliation by threatening arrest for protected speech and obstructing Plaintiffs' attempts to file complaints about police misconduct.

5. The City of Brenham is liable for these constitutional violations because they were committed pursuant to municipal policy as established by the actions and decisions of Lieutenant Raven, who exercised final policymaking authority regarding detention practices and the handling of citizen complaints.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), as this action arises under the Constitution and laws of the United States, specifically the First and Fourth Amendments as incorporated against the states through the Fourteenth Amendment, and 42 U.S.C. § 1983.

5. Venue is properly laid in the Southern District of Texas under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to this claim occurred in this district, specifically at 1507 Lauraine St., Brenham, Texas, 77833, which is within Washington County and the Southern District of Texas.

## III. PARTIES

6. Plaintiff **Dustyn Banik** is a citizen of the United States and a resident of the City of Brenham, Washington County, Texas.

7. Plaintiff **Alma Sanchez** is a citizen of the United States and a resident of the City of Brenham, Washington County, Texas.

8. Plaintiff **Gerran Banik** is a citizen of the United States and a resident of the City of Brenham, Washington County, Texas.

9. Defendant **Corporal Tina Bruno**, Badge #3128, was at all relevant times a police officer employed by the Brenham Police Department. All actions and omissions of Defendant Bruno alleged herein were taken under color of state law and within the scope of her employment with the Brenham Police Department. She is sued in her individual capacity only. She may be served with process at the Brenham Police Department, 1800 Longwood Drive, Brenham, Texas 77833, or wherever she may be found.

10. Defendant **Sergeant Ashley Batson, née Burns**, Badge #3141, was at all relevant times a police officer employed by the Brenham Police Department. All actions and omissions of Defendant Batson alleged herein were taken under color of state law and within the scope of her employment with the Brenham Police Department. She

is sued in her individual capacity only. She may be served with process at the Brenham Police Department, 1800 Longwood Drive, Brenham, Texas 77833, or wherever she may be found.

11. Defendant **Lieutenant Kelvin Raven**, Badge #3140, was at all relevant times a police officer employed by the Brenham Police Department. All actions and omissions of Defendant Raven alleged herein were taken under color of state law and within the scope of his employment with the Brenham Police Department. At all times relevant to this Complaint, Lieutenant Raven possessed final policymaking authority with respect to certain aspects of the Brenham Police Department's operations, including but not limited to detention practices and the handling of citizen complaints. He is sued in both his individual and official capacities. He may be served with process at the Brenham Police Department, 1800 Longwood Drive, Brenham, Texas 77833, or wherever he may be found.

12. Defendant **Officer Ledarion Jenkins**, Badge #3125, was at all relevant times a police officer employed by the Brenham Police Department. All actions and omissions of Defendant Jenkins alleged herein were taken under color of state law and within the scope of his employment with the Brenham Police Department. He is sued in his

individual capacity only. He may be served with process at the Brenham Police Department, 1800 Longwood Drive, Brenham, Texas 77833, or wherever he may be found.

13. Defendant **City of Brenham, Texas,** is a municipal corporation organized under the laws of the State of Texas. The City of Brenham operates and maintains the Brenham Police Department. The City of Brenham may be served with process through its City Manager, Carolyn Miller, or City Secretary, Jeana Bellinger, at 200 W. Vulcan Street, Brenham, Texas 77833.

## IV. FACTUAL ALLEGATIONS

14. On the morning of October 12, 2023, Plaintiffs Dustyn Banik, Alma Sanchez, and Gerran Banik stopped at the Waves convenience store located at 1607 SH-105 E., Brenham, Texas 77833.

15. While at the convenience store, an individual later identified as Miesha Lashey Rogers nearly struck Plaintiffs' parked truck while attempting to maneuver her vehicle past it.

16. Upon noticing that Plaintiffs had observed this near collision, Ms. Rogers initiated a verbal altercation, falsely claiming that the Banik brothers had assaulted her, accusing Plaintiffs of racism, and creating a public disturbance.

17. To avoid further conflict, Plaintiffs departed from the gas station. However, Ms. Rogers proceeded to follow Plaintiffs' vehicle while also calling the Brenham Police Department.

18. Upon realizing they were being followed, Plaintiffs also contacted the Brenham Police Department to report the situation and pulled over near the intersection of Lauraine Street and Sabine Street in a residential neighborhood, where they waited for police to arrive.

19. Defendants Corporal Tina Bruno and Officer LeDarion Jenkins responded to the scene and interviewed both parties.

20. During the first fifteen to twenty minutes of the investigation, Defendants Bruno and Jenkins reviewed surveillance footage from the convenience store.

21. After reviewing the footage and interviewing the parties, Defendants Bruno and Jenkins determined that Plaintiffs had not committed any criminal offense. The surveillance footage clearly showed that the only physical contact between the parties was when an empty bag of ice allegedly brushed against Ms. Rogers' arm, getting a few droplets of water on her.

22. Despite determining that no crime had been committed, Defendants Bruno and Jenkins demanded that Plaintiffs identify themselves, improperly citing Texas law.

23. Plaintiffs correctly informed the officers that, under Texas law (specifically, Texas Penal Code § 38.02), they were not required to identify themselves because they were not under lawful arrest. Section 38.02 states that a person commits an offense if he intentionally refuses to give his name, address, or date of birth to a peace officer who has lawfully arrested the person. Since Plaintiffs had not been lawfully arrested, and Defendants had determined no crime had been committed, Plaintiffs were under no legal obligation to identify themselves.

24. When Plaintiffs asserted their legal right not to identify themselves, Defendants Bruno and Jenkins became hostile and determined to retaliate against Plaintiffs for their refusal to comply with the unlawful demand for identification.

25. Defendants Sergeant Batson (née Burns) and Lieutenant Raven subsequently arrived at the scene. Despite being supervisors who should have been aware of the legal limitations on requiring identification, they endorsed and participated in the continued unlawful

detention of Plaintiffs, rather than correcting their subordinates' constitutional violations.

26. Lieutenant Raven, as the highest-ranking officer present and a supervisor with final decision-making authority regarding detention practices, personally decided to continue detaining the Plaintiffs despite knowing that no crime had been committed and that the sole basis for the continued detention was Plaintiffs' lawful refusal to identify themselves.

27. Even though their investigation had conclusively determined that no crime had been committed, Defendants kept Plaintiffs and their vehicle in police custody for over an hour beyond the time necessary to complete their investigation.

28. During this unlawful detention, Defendants placed Dustyn Banik and Gerran Banik in handcuffs and detained them in the back of a police vehicle.

29. Although Plaintiff Alma Sanchez was eventually released from detention, she was prevented from accessing the Plaintiffs' truck, effectively continuing her detention.

30. Defendants' extended detention of Plaintiffs, lasting over an hour after determining no crime had been committed, was motivated

solely by Plaintiffs' lawful refusal to identify themselves and their assertion of their legal rights.

31. Following this incident, Plaintiffs Dustyn Banik and Gerran Banik submitted formal complaints to the Brenham Police Department regarding the officers' conduct. The Police Department summarily dismissed these complaints as "unfounded" without conducting a proper investigation.

32. Plaintiff Dustyn Banik then contacted Washington County District Attorney Julie Renken to file official oppression charges against the officers. DA Renken requested that the Texas Rangers investigate the matter. Texas Ranger Cody Rogers conducted a perfunctory investigation that merely adopted the Brenham Police Department's narrative that the incident was a minor mistake that had been addressed, despite the fact that the Police Department had refused to acknowledge any wrongdoing or discipline the officers involved.

33. Following these events, Plaintiffs created a YouTube channel called "HonorYourOath BRENHAM TX" to raise public awareness about the police department's conduct and constitutional violations.

34. In further exercise of their First Amendment rights, Plaintiffs later attempted to file complaint forms against Brenham Police Department officers whom they observed violating traffic laws. For over an hour, the Brenham Police Department, including Lieutenant Schoen, refused to accept their complaints, at one point even closing the window blinds to avoid interaction with Plaintiffs.

35. During this encounter, Defendant Lieutenant Raven threatened to arrest Plaintiff Dustyn Banik for Disorderly Conduct based on his use of profanity during the October 12, 2023, incident, despite the fact that such speech is protected by the First Amendment. Defendant Raven also refused to accept Plaintiffs' complaints.

36. As the supervising Lieutenant, Defendant Raven exercised final decision-making authority regarding the department's handling of citizen complaints, establishing a de facto policy of rejecting complaints about officer misconduct. This policy is evidenced by Lieutenant Raven's personal refusal to accept the complaints and his threats to arrest citizens for protected speech when they attempt to file complaints.

37. After approximately one hour, a city employee finally agreed to take Plaintiffs' contact information, but no substantive action was taken on their complaints.

38. Defendants knew or should have known that their continued detention of Plaintiffs, after determining no crime had been committed, violated clearly established constitutional law under the Fourth Amendment.

39. Defendants knew or should have known that detaining Plaintiffs in retaliation for their lawful refusal to identify themselves violated clearly established constitutional law under the First Amendment.

40. As a direct result of Defendants' unlawful actions, Plaintiffs suffered damages including, but not limited to, loss of liberty, emotional distress, humiliation, fear, and mental anguish.

## V. CAUSES OF ACTION

### COUNT I: VIOLATION OF THE FOURTH AMENDMENT – UNLAWFUL DETENTION

(42 U.S.C. § 1983 against all individual Defendants)

41. Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

42. This claim is brought against Defendants Bruno, Batson, Raven, and Jenkins in their individual capacities for their direct participation in the unlawful detention of Plaintiffs.

43. The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, protects individuals from unreasonable searches and seizures.

44. As established by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968), an investigative detention must be reasonably related in scope to the circumstances which justified the interference in the first place, and must not last longer than necessary to effectuate the purpose of the stop.

45. The Supreme Court has further held that once the purpose of a detention has been completed, any continued detention requires independent reasonable suspicion or probable cause. *See Rodriguez v. United States*, 575 U.S. 348 (2015) (holding that a traffic stop "prolonged beyond" the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures).

46. The Fifth Circuit has likewise recognized this principle, holding that "once the purpose of a traffic stop has been fulfilled, the officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify further detention." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004).

47. In the instant case, Defendants completed their investigation within the first fifteen to twenty minutes of the encounter and determined that Plaintiffs had not committed any crime. At that point, the purpose of the detention was complete, and Defendants had no legal basis to continue detaining Plaintiffs.

48. Nevertheless, Defendants continued to detain Plaintiffs for over an hour beyond the completion of their investigation, placing two Plaintiffs in handcuffs and in the back of a police vehicle.

49. Defendants had no independent reasonable suspicion or probable cause to justify the continued detention after determining that no crime had been committed. Their sole reason for extending the detention was Plaintiffs' verbal criticisms and lawful refusal to identify themselves.

50. Under Texas law, specifically Texas Penal Code § 38.02, a person is only required to identify themselves to a peace officer if they have been lawfully arrested. Since Plaintiffs had not been lawfully arrested, they had no legal obligation to identify themselves to Defendants. See also *Sauceda v. City of San Benito*, 78 F.4th 174, 186 (5th Cir. 2023) (recognizing that a person's "refusal" to identify "can never supply probable cause to make the initial arrest").

51. Any reasonable officer would have known that continuing to detain Plaintiffs after determining no crime had been committed, solely because they refused to identify themselves when they had no legal obligation to do so, violates clearly established Fourth Amendment law.

52. Defendants' actions were objectively unreasonable in light of the clearly established law at the time of the incident, and they are not entitled to qualified immunity.

53. As a direct and proximate result of Defendants' violations of Plaintiffs' Fourth Amendment rights, Plaintiffs suffered damages including, but not limited to, loss of liberty, emotional distress, humiliation, fear, and mental anguish.

## COUNT II: VIOLATION OF THE FIRST AMENDMENT - RETALIATION

(42 U.S.C. § 1983 against all individual Defendants)

54. Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

55. This claim is brought against Defendants Bruno, Batson, Raven, and Jenkins in their individual capacities for retaliating against Plaintiffs for exercising their First Amendment rights.

56. The First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits

government officials from retaliating against individuals for engaging in protected speech or activity.

57. The right to be free from retaliation for exercising First Amendment rights is clearly established. *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (noting that "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out").

58. The Supreme Court has long held that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). The Court further noted that "the freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 462-63. Thus, the right to criticize police and refusal to provide identification when not legally required is a form of protected expression.

59. Plaintiffs exercised their clearly established First Amendment rights when they: a. Correctly informed Defendants that, under Texas law, they were not required to identify themselves because

they were not under lawful arrest; and b. Refused to comply with Defendants' unlawful demands for identification.

60. In direct response to Plaintiffs' protected speech and assertion of their legal rights, Defendants retaliated by: a. Extending Plaintiffs' detention after determining no crime had been committed; b. Placing Dustyn Banik and Gerran Banik in handcuffs and detaining them in the back of a police vehicle; and c. Preventing Alma Sanchez from accessing their vehicle.

61. Defendants' retaliatory actions were substantially motivated by Plaintiffs' exercise of their First Amendment rights. Indeed, Defendants' extended detention of Plaintiffs began immediately after Plaintiffs asserted their right not to identify themselves and criticized police conduct.

62. Defendants' retaliatory actions would deter a person of ordinary firmness from continuing to engage in the protected speech or activity.

63. The right to be free from retaliation for asserting one's constitutional rights, including the right not to identify oneself when not legally required to do so, was clearly established at the time of the incident.

64. Any reasonable officer would have known that extending a detention, placing individuals in handcuffs, and confining them in a police vehicle solely because they lawfully refused to identify themselves and asserted their legal rights, violates clearly established First Amendment law.

65. Defendants' actions were objectively unreasonable in light of the clearly established law at the time of the incident, and they are not entitled to qualified immunity.

66. As a direct and proximate result of Defendants' violations of Plaintiffs' First Amendment rights, Plaintiffs suffered damages including, but not limited to, loss of liberty, emotional distress, humiliation, fear, and mental anguish.

**COUNT III: MUNICIPAL LIABILITY**

(42 U.S.C. § 1983 against Defendant City of Brenham and Lieutenant Raven in his official capacity)

66. Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

67. This claim is brought against Defendant City of Brenham and Lieutenant Raven in his official capacity as a final policymaker for the Brenham Police Department.

68. Upon information and belief, Lieutenant Raven possessed final policymaking authority with respect to detention practices and citizen complaint procedures because:

a. As the highest-ranking officer present, he exercised unreviewable discretion over the continued detention of Plaintiffs;
b. His unilateral authority to continue the detention of Plaintiffs despite the determination that no crime had been committed;
c. His decisions regarding the detention were not subject to contemporaneous review or approval by higher authority;
d. The City of Brenham has delegated final authority to supervising lieutenants to make detention decisions in the field without prior approval;
e. No written policies or procedures constrained Lieutenant Raven's discretion to continue or terminate the detention once the initial investigation concluded;
f. Lieutenant Raven's subsequent conduct in refusing to accept citizen complaints and threatening retaliatory

arrest demonstrates his final authority over complaint procedures.

69. Plaintiffs' belief regarding Lieutenant Raven's policymaking authority is based on the following observed facts:

a. No higher-ranking official was consulted during the extended detention;

b. Junior officers immediately deferred to Raven's directives without question or consultation of written policies;

c. Raven's detention decision was implemented immediately and continued for over an hour without any review or approval process;

d. Raven later exercised similar unreviewable authority in refusing citizen complaints and threatening arrest; and

e. No evidence of any oversight, review, or policy constraints on Raven's decision-making was apparent during these interactions.

70. The City of Brenham is liable under 42 U.S.C. § 1983 for the constitutional violations alleged herein because they were caused by the actions and decisions of Lieutenant Kelvin Raven, who possessed

final policymaking authority with respect to detention practices and the handling of citizen complaints within the Brenham Police Department.

71. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) and its progeny, a municipality may be held liable under Section 1983 for constitutional violations caused by the actions and decisions of officials with final policymaking authority. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (holding that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances").

72. The Fifth Circuit recognizes that a single decision by a municipal official with final policymaking authority in a given area can constitute official municipal policy. *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) (holding that a single unconstitutional action by a policymaker may give rise to municipal liability).

73. In determining whether an official has final policymaking authority, courts look to state law, including "state and local positive law, as well as custom or usage having the force of law." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

74. Lieutenant Raven, by virtue of his rank and position as a supervising officer within the Brenham Police Department, possessed final policymaking authority with respect to:

a. Decisions regarding continued detention of individuals after initial investigations;

b. Decisions regarding whether to accept or reject citizen complaints about officer misconduct; and

c. Decisions regarding how to respond to citizens who assert their constitutional rights.

75. The unconstitutional actions taken by Lieutenant Raven, as a final policymaker, constituted official policy of the City of Brenham. These actions included:

a. The decision to continue detaining Plaintiffs solely because they refused to identify themselves when not legally required to do so;

b. The decision to retaliate against Plaintiffs for asserting their constitutional rights by prolonging their detention, placing them in handcuffs, and confining them in a police vehicle, and the decision to refuse to accept complaints

about officer misconduct and to threaten retaliatory arrest for protected speech.

76. Lieutenant Raven not only knew of the unconstitutional actions being taken against Plaintiffs but actively participated in and directed those actions.

77. The City of Brenham is liable for the constitutional violations suffered by Plaintiffs because they were directly caused by the actions and decisions of Lieutenant Raven acting in his capacity as a policymaker for the City.

78. As a direct and proximate result of these unconstitutional policies established by Lieutenant Raven as a final policymaker for the City of Brenham, Plaintiffs suffered damages including, but not limited to, loss of liberty, emotional distress, humiliation, fear, and mental anguish.

## VI. DAMAGES

78. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs suffered damages including, but not limited to:

a. Loss of liberty;

b. Emotional distress;

c. Humiliation;

d. Fear;

e. Mental anguish; and

f. Violation of their constitutional rights.

79. Plaintiffs seek the following damages:

a. Compensatory damages in an amount to be determined at trial;

b. Punitive damages against all individual Defendants in their individual capacities, as their conduct involved reckless and callous indifference to Plaintiffs' federally protected rights;

c. Nominal damages in the amount of $1.00;

d. Reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

e. Costs of court; and

f. Pre-judgment and post-judgment interest as allowed by law.

## VII. JURY DEMAND

80. Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Dustyn Banik, Alma Sanchez, and Gerran Banik respectfully request that this Court:

a. Enter judgment in favor of Plaintiffs and against each of the Defendants;

b. Award Plaintiffs compensatory damages against all Defendants in an amount to be determined at trial;

c. Award Plaintiffs punitive damages against all individual Defendants in their individual capacities in an amount to be determined at trial;

d. Award Plaintiffs nominal damages in the amount of $1.00;

e. Award Plaintiffs reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

f. Award Plaintiffs the costs of this action;

g. Award Plaintiffs pre-judgment and post-judgment interest as allowed by law;

h. Issue appropriate declaratory and injunctive relief to prevent future violations of citizens' constitutional rights. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

**GRABLE PLLC**

*/s/ Brandon J. Grable*

**Brandon J. Grable**
Texas State Bar No. 24086983
brandon@grable.law
12451 Starcrest Dr., Ste. 206
San Antonio, Texas 78216
Telephone: (210) 963-5297
Facsimile: (726) 215-4765
**Counsel for Plaintiffs**